**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VICKI LOCK,

       Plaintiff,                      **CIVIL ACTION NO. 14-CV-13223**

vs.                                 **DISTRICT JUDGE SEAN F. COX**

                                    **MAGISTRATE JUDGE MONA K. MAJZOUB**
BANK OF AMERICA,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Vicki Lock filed this action in the Circuit Court for the County of St. Clair, Michigan, alleging that Defendant Bank of America, properly referred to as Bank of America, N.A. (BANA), violated MCL 600.3205c; violated the Real Estate Settlement Procedures Act, 12 USC §2605(c) (RESPA); violated the Home Affordable Modification Program (HAMP); and committed negligent misrepresentation with regard to a mortgage held by Defendant on Plaintiff's home. (*See* docket no. 1-2.) The matter was removed to this Court by Defendant. (Docket no. 1.) Before the Court is Defendant's Motion to Dismiss. (Docket no. 5.) Plaintiff filed a Response. (Docket no. 11.) Defendant Filed a Reply. (Docket no. 12.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 6.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.    Recommendation

For the reasons stated herein, Defendant's Motion to Dismiss [5] should be GRANTED.

1

This matter should be dismissed in its entirety.

**II.      Report**

      **A.      Facts**

On September 22, 2003, Plaintiff and her late husband entered into two mortgage transactions with Countrywide Home Loans: (1) a primary mortgage and note related to a loan in the amount of $249,000.00, which is not at issue in this matter; and (2) a second mortgage and note related to a home equity line of credit in the amount of $150,000.00.   (*See* docket nos. 5-2, 5-3, 5-4, and 5-5.)   Defendant BANA is the servicer of the home equity line of credit.   Plaintiff and her husband made regular payments on their debt until, as Plaintiff alleges, "in 2008 as a result of the economic collapse the assets of Plaintiff and her husband were substantially depleted." (Docket no. 1-2 at 6.)   Plaintiff's husband passed away in 2009, and "Plaintiff suffered a debilitating stroke" in 2012.   (*Id.*)

It is unclear from the Parties' filings exactly when Plaintiff defaulted on her payments or when BANA first contacted Plaintiff with regard to the default, but on March 27, 2014, Plaintiff's attorney contacted BANA with notice of appearance on Plaintiff's behalf and to provide a copy of Mr. Lock's death certificate, "[a]s requested in [BANA's] March 11, 2014" letter to Plaintiff. (Docket no. 5-13.)   Plaintiff claims that on April 2, 2014, she received a letter from BANA "regarding loan modification and the ability to be evaluated for alternatives to foreclosure. (Docket no. 1-2 at 20.)   Nevertheless, on April 9, 2014, BANA's lawyers, in their capacity as a debt collection agency, contacted Plaintiff to notify her that the second mortgage had been referred for foreclosure.   (Docket no. 5-7.)   They informed Plaintiff that she currently owed $152,902.28, inclusive of principal balance, unpaid interest, and late charges.   (*Id.*)

2

That same day, Plaintiff's attorney had a conversation with Vivian Lawson, a Customer Relationship Manager for BANA, in which they discussed a possible refinance related to Plaintiff's debt. (*See* docket no. 5-14.) Pursuant to that conversation, on April 18, 2014, Plaintiff's attorney sent Ms. Lawson some financial documents on Plaintiff's behalf. (*See id.*; *see also*, docket no. 1-2 at 15.) On May 23, 2014, BANA sent Plaintiff a letter indicating that she was "not eligible for any loan modification programs" because of her income, financial resources, and expenses. (Docket no. 5-9.)

On June 6, 2014, Plaintiff's attorney sent a letter to Chrystal Ingram and Peter Eldorado, BANA Supervisors, "requesting a reduction in principal based on death, financial hardship and physical health hardship," noting that Plaintiff's annual income was $16,000 per year and offering a sum of $15,000 to settle the second mortgage. (Docket no. 5-11.) Plaintiff alleges that her attorney followed that letter with phone calls to Ms. Ingram and Mr. Eldorado but that those calls were never returned. (Docket no. 1-2 at 15.)

On July 9, 2014, BANA's attorneys initiated a foreclosure by advertisement in St. Clair County, indicating that Plaintiff's home would be sold by auction at a sheriff's sale on August 7, 2014. (Docket no. 5-8.) On July 11, 2014, Plaintiff's attorney contacted BANA's attorney requesting a face-to-face meeting and asking them to "remove the home from foreclosure as service was not proper and [BANA] did not respond or follow the State and Federal regulations with respect to communication and home retention." (Docket no. 5-12.) In the letter, Plaintiff's attorney references his letters discussed above and sent to BANA on March 27, 2014, April 16, 2014, and June 6, 2014. (*Id.*)

Defendant and its attorneys did not respond, and on August 5, 2014, Plaintiff filed her

3

instant claim.   (*See* docket no. 1-2.)   Pursuant to a temporary restraining order, the sheriff's sale

on Plaintiff's home was adjourned until August 27, 2014.   (*See* docket no. 5 at 3 n.3.)   The sale

was adjourned four more times through September 24, 2014, the date Defendant filed its instant

motion.   (*See id.*)   The Parties have provided no additional information with regard to the current

status of Plaintiff's home.

### B.      Governing Law

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of a complaint.   The court must "construe the complaint in the light most favorable to

the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the

plaintiff."   *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp*., 281

F.3d 613, 619 (6th Cir. 2002).   To survive a Rule 12(b)(6) motion to dismiss, the complaint's

"factual allegations must be enough to raise a right to relief above the speculative level on the

assumption that all of the allegations in the complaint are true."   *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (internal citations and emphasis omitted); *see also Ass'n of Cleveland

Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal

conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere

conclusory statements do not suffice."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Thus, the

court is "not bound to accept as true a legal conclusion couched as a factual allegation."   *Id.*

(internal quotations and citations omitted).   "Only a complaint that states a plausible claim for

relief survives a motion to dismiss."   *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific

4

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

To make this determination, a court may apply the following two-part test: (1) "identify pleadings

that, because they are no more than conclusions, are not entitled to the assumption of truth;" and

(2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give

rise to an entitlement to relief." *Id.* at 679.

### C.      Analysis

In her Complaint, Plaintiff sets out her claims through five counts: (I) a request for

injunctive relief for Defendant's alleged failure to comply with MCL 600.3205c; (II) Defendant's

substantive Violation of MCL 600.3205c; (III) a Violation of RESPA; (IV) a Violation of HAMP;

and (V) Intentional Misrepresentation.   (Docket no. 1-2.)   Through its Motion to Dismiss,

Defendant asserts that Plaintiff's Counts I and II fail because the statute on which she relies was

repealed effective June 30, 2013; her Count III fails because Plaintiff's letters to BANA were not

Qualified Written Requests (QWRs) for information and because Plaintiff has not alleged any

actual damages related to the alleged violation; her Count IV fails because Plaintiff cannot assert

any private right of action under HAMP; and her Count V fails because even if BANA committed

misrepresentation as alleged by Plaintiff, Plaintiff did not act in reliance on the misrepresentation

and was not injured by the misrepresentation.   (Docket no. 5.)   Plaintiff responds to these

arguments by attacking the Defendant's professionalism, ethics, and morality and by asserting,

generally, that (1) her "claim and cause of action under [MCL 600.3205c] accrued before it

expired;" (2) [i]t is clear from the reading of just some of Plaintiff's correspondences . . . that in

spirit, fact, and law, Plaintiff's actions before and after counsel was involved amounted to a QWR;

and (3) "[a]pparently having your name and address published in the foreclosure section of the

5

newspaper, damage to your credit which affects one's ability to live, and loss of your home due to a 2nd mortgage at the hands of a negligent, incompetent, abusive, irresponsible bank does not constitute damages in the eyes of [Defendant]."   (Docket no. 11 at 8-9.)

### 1.        Plaintiff's Claims Under MCL 600.3205c

Before its repeal, MCL 600.3205c required mortgage holders to "work with the borrower to determine whether the borrower qualifies for a loan modification."   MCL 600.3205c(1).   In her Complaint, Plaintiff alleges that Defendant violated MCL 600.3205 by not providing "copies of the guidelines and calculations to Plaintiff prior to beginning the foreclosure process" and that Defendant violated MCL 600.3205c.   (Docket no. 1-2 at 16-18.)   The remainder of Plaintiff's Counts I and II are merely threadbare recitals of the elements of her claims without any factual support.   (*See id.*)   Thus, Plaintiff's claims fail under *Iqbal* and *Twombly*.

Moreover, though, as Defendant notes, MCL 600.3205c was repealed effective June 30, 2013, and MCL 600.3205 was repealed effective June 19, 2014.   *See* MCL 600.5205c; MCL 600.3205.   Plaintiff asserts without support that her claim accrued before the statute was repealed and that she can, therefore, pursue her claims today.   (Docket no. 11 at 8.)   Plaintiff is incorrect.

Defendant relies on *Lossia v. JPMorgan Chase Bank, Nat. Ass'n* for the proposition that "Courts have 'declined to apply §§ 600.3205a-d since the repeal, even when the foreclosure proceedings took place before the repeal.'" No. 14-11361, 2014 WL 4064285, *2 (E.D. Mich. Aug 18, 2014). But Defendant ignores the Court's holding in *Lossia*, which recognized that "[o]ther courts, both at the state and federal levels, have applied §§ 600.3205a-d in cases involving foreclosures that took place when it remained in effect;" thus, the Court found that the provisions at issue were applicable in August 2014 where the foreclosure took place in 2010. *Id.* at *3.

6

Nevertheless, while *Lossia* may not extend the effect of the repeal to cases where the foreclosure took place before the repeal itself, such is not the case here.   In the matter at hand, Defendant's foreclosure on Plaintiff's home took place on July 8, 2014, over a year after the effective repeal date of MCL 600.3205c and several weeks after the effective repeal date of MCL 600.3205. Therefore, Plaintiff's Counts I and II fail as a matter of law.

### 2.       Plaintiff's RESPA Claim

In her Count III, Plaintiff alleges that Defendant violated the RESPA, 12 U.S.C. § 2605(e)(2), by failing to respond to Plaintiff's QWR.   (Docket no. 1-2 at 18.)   Plaintiff alleges that her letters sent on or about March 27, 2014, June 10, 2014, and July 11, 2014 were QWRs under 12 U.S.C. §2605(c).   (*Id.* at 18-19.)   Defendant argues that Plaintiff's letters do not qualify as QWRs and that even if the letters do qualify, Plaintiff has failed to allege damages under the RESPA.   (Docket no. 5 at 16-17.)

The RESPA provides that a borrower may submit a qualified written request to its loan servicer for "information relating to the servicing of such loan," and if such a request is made, the servicer must provide a written response acknowledging receipt of the request within twenty days. 12 U.S.C. § 2605(e)(1)(A).

The term "qualified written request" is defined as:

[A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

> Within a period of sixty days of receiving a qualified written request, the servicer must:
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction...;
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes -
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes -
>
>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

The undersigned finds that none of the letters sent by Plaintiff are QWRs within the definition provided under the RESPA. While all three letters allow Defendant to identify the name and account of the borrower, none of the letters "in spirit, fact, [or] law" states any reason that Plaintiff believes her account is in error or provide any detail regarding information sought by Plaintiff. To the contrary, the March 27 letter merely notifies Defendant that Plaintiff is represented by counsel and provides Defendant with Mr. Lock's death certificate. (*See* docket no.

8

5-13.)  The June 6 letter[1] Plaintiff notes that "[t]he purpose of this letter is to request a reduction in principal based on death, financial hardship and a physical health hardship."  (Docket no. 5-11.)  That is, Plaintiff does not seek any information but, instead, offers $15,000 to settle her debt.  (*Id.*)  Finally, the July 11 letter, directed to Defendant's attorney, not Defendant itself, requests a face-to-face meeting and asserts that service was improper with regard to her foreclosure, not that her account was in error.  (Docket no. 5-12.)  This final letter even offers to provide Defendant's attorneys "with a copy of the entire Bank of America file if needed," which further supports Defendant's contention that Plaintiff was not requesting any information.  (*Id.*)  Therefore, because Plaintiff's letters were not QWRs, Defendant could not have violated the RESPA.

But as Defendant asserts, even if the Court determines that the letters were QWRs, Plaintiff's Complaint fails to allege any damages as a result of the alleged RESPA violation.  (Docket no. 5 at 18.)  Plaintiff claims generally that she "is entitled to her actual damages, plus punitive damages, attorney fees and costs due to Defendant's failure to respond to [QWRs]."  (Docket no. 1-2 at 11.)  And she responds to Defendant's Motion by claiming that her damages include "having [her] name and address published in the foreclosure section of the newspaper, damage to [her] credit . . . , and loss of [her] home."  (Docket no. 11 at 9.)  But Plaintiff neither alleges in her Complaint nor explains in her Response how these damages resulted from Defendant's alleged failure to respond to her letters.  *See Drew v. Kemp–Brooks*, 802 F.Supp.2d 889, 897 (E.D.Mich.2011) ("A claim for relief based upon a purported failure to respond to a

---

[1] Neither party has provided a letter sent by Plaintiff on June 10, 2014; thus, the undersigned has assumed for purposes of this Motion that the letter sent by Plaintiff's counsel on June 6, 2014, is the letter referenced in Plaintiff's Complaint as being sent "on or about June 10."

QWR must be dismissed when the plaintiff fails to show damages resulting from the purported failure to respond."); *see also Copeland v. Bank of America Corp.*, No. 13-13136, 2014 WL 1308788, at \*10 (E.D. Mich. Mar. 31, 2014) (Hood, J.) (dismissing the plaintiff's RESPA claims under *Drew* where her claims were "without any factual support to her allegations of damages"). Therefore, Plaintiff's RESPA claims should be dismissed.

### 3.    Plaintiff's HAMP Claim

In her Count IV, Plaintiff sets forth the requirements of a loan servicer participating in the Home Affordable Modification Program (HAMP).  (Docket no. 1-2 at 19-22.)  Plaintiff then alleges generally that she "is an intended third party beneficiary of the Servicer Participation Agreement" and that she suffered damages due to Defendant's alleged failure to follow the HAMP regulations.  (*Id.* at 22.)  But as Defendant points out, "[c]ourts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers."  *Wigod v. Wells Fargo Bank, N.A.*, 637 F.3d 547, 558 n.4 (7th Cir. 2012) (collecting cases); *see Ray v. U.S. Bank Nat. Ass'n*, No. 14-11831, 2015 WL 400918, at \*5 (E.D. Mich. Jan 28, 2015) (Leitman, J.) (citing *Nafso v. Wells Fargo Bank*, N.A., No. 11–10478, 2011 WL 1575372, at \*2–3 (E.D.Mich. Apr.26, 2011)).  Defendant is correct.  Plaintiff's HAMP claims should be dismissed.

### 4.    Plaintiff's Intentional Misrepresentation Claim

In Plaintiff's Count V, she claims that Defendant committed intentional misrepresentation when it started foreclosure proceedings without first making a determination that Plaintiff's loan modification request would be denied.  (Docket no. 1-2 at 23.)  Plaintiff asserts that although the foreclosure notice was posted on July 9, 2014, she received a letter on or about July 21, 2014,

10

stating that her "recent home loan inquiry was received and we're in the process of conducting our review to provide you with a response." (*Id.*) She further asserts that Defendant advertised the foreclosure sale "with the knowledge that they had not yet processed and/or completed Plaintiff's written request for a loan modification" and that she was "damaged by the statements that Defendant has wrongfully published her mortgage foreclosure and has failed to approve her for the modification which would allow [her] to keep her home." (*Id.*)

Under Michigan law, to support a claim for fraudulent misrepresentation, a plaintiff must show: (1) that the defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that the plaintiff acted in reliance upon it; and (6) that the plaintiff thereby suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976) (quotations omitted). "[T]he absence of any one of [these elements] is fatal to a recovery." *Id.* Moreover, Fed. R. Civ. P. 9(b) imposes strict particularity requirements when pleading fraud. To meet the particularity requirements of Rule 9(b), a plaintiff must "(1) specify the statements that [Plaintiff] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal quotation marks and citation omitted). At a minimum, the plaintiff "must allege the time, place and contents of the misrepresentations upon which [she] relied." *Id.* The plaintiff "also must allege facts from which it could be concluded that [her] reliance was reasonable." *Issa v. Provident Funding Group, Inc.*, No. 09-12595, 2010 WL 538298, *5 (E.D. Mich. Feb. 10, 2010) (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d

546, 553-54 (Mich. Ct. App. 1999)).   "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendant[] to answer, addressing in an informed way the [plaintiff's] claim of fraud."   *Kashat v. Paramount Bancorp, Inc.*, No. 09-10863, 2010 WL 538295, at *4 (E.D. Mich. Feb. 10, 2010) (citation omitted; alterations in original) (dismissing the plaintiffs' complaint because it did "not contain allegations concerning the time and place of the alleged misrepresentations" and stating that "[the plaintiffs] cannot merely recite a statute, claim it has been violated, and expect to survive a motion to dismiss.").   *See also Ass'n of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citation omitted) (holding that a plaintiff's pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

Defendant contends that Plaintiff's intentional misrepresentation claim fails because even if Defendant's statements were false, Plaintiff neither alleges nor can she support any claim that Defendant intended for her to rely on any of its statements.   (Docket no. 5 at 22.)   At most, Defendant states, "these allegations would only support a misrepresentation to the public generally, rather than to Plaintiff."   (*Id.*)   Defendant further asserts that Plaintiff's claim fails to meet the particularity requirements of Fed. R. Civ. P. 9(b) because it "fails to allege the time, place and content of the alleged misrepresentations on which she relied."   (*Id.* at 23 n.7.)   The undersigned agrees.   Even accepting as true Plaintiff's allegations that Defendant started foreclosure proceedings while also considering a refinance of Plaintiff's property, nothing in Plaintiff's allegations suggests that any of these actions included false misrepresentations. Moreover, even if the Court accepts Plaintiff's assertion that publishing her home for foreclosure was a material misrepresentation of the status of her home, Plaintiff's allegations do not support

12

any claim that Defendant intended for Plaintiff to rely on those representations.   Defendant is also

correct that Plaintiff's Complaint does not meet the particularity requirements of Rule 9(b).

Therefore, Plaintiff's Count V should be dismissed.

### 5.    Plaintiff's Request for Leave to Amend

In her Response to Defendant's Motion, Plaintiff mentions in passing that the Court should

grant "Leave to Amended (sic) Pleadings as justice and equity so require."   (Docket no. 11 at 1.)

Any such motion, however, is not before the Court as Plaintiff has not filed a Motion to Amend.

Moreover, even if the Court were inclined to consider Plaintiff's request, she has not complied

with E.D. Mich. L.R. 15.1 by attaching her proposed amended pleading.   Therefore, Plaintiff's

request for leave to amend should be denied.

### D.    Conclusion

For the reasons stated above, the undersigned recommends granting Defendant's Motion to

Dismiss [5].   This matter should be dismissed in its entirety.

### III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific

objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States*

*v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to

raise others with specificity, will not preserve all the objections a party might have to this Report

and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.

13

1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.   Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.   The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:   March 23, 2015                              s/ Mona K. Majzoub
                                                     MONA K. MAJZOUB
                                                     UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated:   March 23, 2015                              s/ Lisa C. Bartlett
                                                     Case Manager

14